UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES LESTER RALSTON,

                    Petitioner,                    Case No. 1:13-cv-4

v.                                                 Honorable Robert J. Jonker

JOHN PRELESNIK

                    Respondent.
_____/

## **OPINION**

      This is a habeas corpus action brought by a former state prisoner under 28 U.S.C. § 2254.[1]  Following a jury trial in the Ingham County Circuit Court, Petitioner James Lester Ralston was convicted of aggravated stalking, Mich. Comp. Laws § 750.411i.  On January 6, 2009, the Ingham County Circuit Court sentenced him as a second-offense habitual offender, Mich. Comp. Laws § 769.10, to a prison term of 28 to 90 months.

      In his *pro se* petition, Petitioner raises the following grounds for relief:

I.      Petitioner's right to due process was violated because he was not given *Miranda* warnings upon his arrest on June 27, 2008.

II.     Ineffective assistance of trial counsel where counsel:  (I) refused to let Petitioner testify; (ii) refused to subpoena witnesses; (iii) failed to raise an issue of jury tampering at trial; and (iv) refused to enter a poem as an exhibit for trial.

---

[1]Petitioner was discharged from his sentence on December 26, 2015, having completed his maximum sentence. Mich. Dep't of Corr. Offender Tracking Information Serv. (OTIS), http://mdocweb.state.mi.us/otis2/otis2profile.aspx? mdocNumber=715956.  Because Petitioner filed his habeas application while he was still in custody on the conviction, he continues to satisfy Article III's "case or controversy" requirement because of the continuing collateral consequences to a wrongful criminal conviction.  *Spencer v. Kemna,* 523 U.S. 1, 8 (1998).

III.     Ineffective assistance of appellate counsel for failing to raise issues presented in Petitioner's motion for relief from judgment.

IV.     Prosecutorial misconduct for: (I) denying exculpatory evidence and (ii) improperly tainting the jury during voir dire.

V.     Judicial misconduct for: (I) not allowing Petitioner to attend pre-trial hearings; (ii) denying submission of Petitioner's exhibits at sentencing or on appeal; (iii) allowing the prosecutor to contaminate the jury at voir dire; and (iv) refusing to allow Petitioner to release his appointed counsel before sentencing.

(Pet., ECF No. 1, Page ID.6, 7, 9, 10, 12.)  On January 10, 2014, Respondent filed an answer to the petition (ECF No. 21), stating that the grounds should be denied because they are either procedurally defaulted, and/or without merit.  On January 16, 2014, Respondent filed the state-court record, as required by Rule 5, RULES GOVERNING § 2254 CASES.  (ECF Nos. 23-35.)  Upon review and applying the AEDPA standards, the Court finds that all habeas grounds are meritless.  Accordingly, the Court will deny the petition for failure to raise a meritorious federal claim.

**<u>Procedural and Factual Background</u>**

The state prosecution arose from Petitioner's violation of a personal protection order obtained by the complainant, Heather McGuire.  Petitioner was charged with one count of aggravated stalking, and following a preliminary examination on July 10, 2008, he was bound over on that charge.  (Prelim. Exam. Hr'g Tr., ECF Nos. 24-25.)  Prior to trial, the prosecution sought a competency examination.  At a hearing held on September 30, 2008, the parties stipulated to the report of the competency examiner, and the court found Petitioner competent to stand trial.  (Competency Hr'g, 3, ECF No. 26.)

Petitioner was tried before a jury beginning January 5, 2009,[2] and concluding on January 5, 2009.  Prior to jury selection, defense counsel moved to dismiss the proceeding under MICH. CT. R. 6.004(E), which provides the remedy of dismissal to a defendant who has been incarcerated pending trial for more than 180 days, subject to certain exclusions, as set forth under MICH. CT. R. 6.004(C).  The court denied the motion, as the one-and-one-half month period during which Petitioner was referred to the forensic center for a competency evaluation, was excludable under MICH. CT. R. 6.004(C)(1).  (Tr. I, 4.)

Petitioner does not dispute the following facts, as recited by the Michigan Court of Appeals:

Complainant testified that she first encountered defendant while she was working alone at the Crystal Bar in Holt in January 2008.  Her hairstyle at the time consisted of a shaved head.  According to complainant, near the end of her shift defendant handed her a poem he had written, which she described as "disgusting," "dominating and forceful," and sexual in nature, causing her to feel "uncomfortable and really unsafe."  When defendant asked what she thought of his effort, complainant replied, "That's not my style, I'm not into that."  Complainant further testified that she made a note of defendant's name and E-mail address in the bar's logbooks the night of that encounter, "just in case I came up missing."

Complainant did not see defendant again until doing so in court, but in February 2009 she received at the bar "a few more pages of his version of poetry," again laced with references to sexuality, violence, and Satan.  Then, in May of that year, she received ten more pages of such ruminations.

Complainant obtained a personal protection order (PPO) against defendant, barring him from any further contact with her.  After the order was in effect, however, she received from defendant two more mailings at her work address.  Complainant identified a motion to terminate the PPO, and a proof of service, and sample court order from the first mailing, and a supplemental motion to modify or terminate with supporting documentation from the second.  Above her name on the first envelope was written "Lesbee Friends," and at the top of one page was written

_____

[2]The transcript for January 5, 2009, is mistakenly dated January 5, 2006.  (*See* Trial Tr. I (Tr. I), ECF No. 27; Cir. Ct. Register of Action, 4, ECF No. 23.)

> "Let's not be enemies . . . ."  Complainant opined that the "Lesbee" wording was probably a reference to lesbianism, prompted by her baldness. The return address of the second envelope was styled as "Johnny Rotten, John Salemi Attorney at Law." The documentation within included the statements, "I'm going to spank the guilty. Every one take cover," and "Revenge is sweet when you are in jail or in prison locked up tight."

(Mich. Ct. App. (MCOA) Op., 1-2, ECF No. 32.)  Defense counsel moved for a directed verdict, contending that Petitioner was required by law to send copies of the motion and supplemental motion to terminate the PPO, so those contacts could not be considered to be violations of the PPO.  In addition, he argued that the notations contained on the envelopes were insufficient to amount to harassment in violation of the PPO.  The court denied the motion to dismiss, concluding that the added messages to the complainant, in the context of the PPO and the earlier harassing conduct, would support a reasonable jury's finding of guilt.  (Trial Tr. II, 29-33.)  The defense called no witnesses, and Petitioner did not testify.  (*Id.*, 34.)

At the conclusion of trial, on January 6, 2009, the jury found Petitioner guilty of aggravated stalking.  (Tr. II, 87, ECF No. 28.)  On January 28, 2009, Petitioner was sentenced to serve a prison term of 28 to 90 months as a second-offense habitual offender.  (Sentencing Transcript, (S. Tr.), 13, ECF No. 29.)

Petitioner appealed his conviction to the Michigan Court of Appeals, raising two questions:

> I.   [PETITIONER'S] CONVICTION FOR AGGRAVATED STALKING SHOULD BE REVERSED, AND THE SENTENCE VACATED, AS THE PROSECUTION FAILED TO PRESENT CONSTITUTIONALLY SUFFICIENT EVIDENCE THAT [PETITIONER'S] ALLEGED ACTIONS MET THE STATUTORY DEFINITIONS FOR A COURSE OF CONDUCT, AT LEAST ONE OF SUCH ACTS BEING IN VIOLATION OF A PERSONAL PROTECTION ORDER OF WHICH HE HAD NOTICE.

II.      [PETITIONER] IS ENTITLED TO A NEW TRIAL AS HIS JURY WAS IMPROPERLY INFLUENCED BY SEEING A UNIFORMED POLICE OFFICER SITTING WITH MS. MCGUIRE DURING THE TRIAL, IMPLYING THAT [PETITIONER] WAS SUCH A THREAT TO HER SAFETY THAT ADDITIONAL SECURITY WAS NECESSARY, WHEN IN FACT THAT OFFICER WAS THE COMPLAINANT'S BROTHER.

(Pet'r's Br. on Appeal, ECF No. 32.)  In an unpublished opinion issued on February 25, 2010, the court of appeals rejected both arguments and affirmed the conviction.

Petitioner filed an application for leave to appeal to the Michigan Supreme Court, raising the same two issues.  On July 26, 2010, the supreme court denied leave to appeal because it was not persuaded that the questions presented should be reviewed by the court.

Petitioner thereafter filed his first habeas corpus application under 28 U.S.C. § 2254, which this Court dismissed without prejudice for failure to exhaust all habeas claims.  *See Ralston v. Howes*, No. 1:11-cv-25 (W.D. Mich.  Feb. 22, 2011).  Petitioner then filed a motion for relief from judgment in the trial court on June 8, 2011, raising the same five issues he presents in this habeas petition.  The trial court denied the motion June 24, 2011.  Petitioner appealed the denial of his motion to the Michigan Court of Appeals and the Michigan Supreme Court.  While his appeal was pending, Petitioner filed a second habeas petition in this Court.  That petition also was dismissed without prejudice for lack of exhaustion.  *See Ralston v. Klee*, No. 1:11-cv-1057 (W.D. Mich. Nov. 8, 2011).  The Michigan Court of Appeals denied leave to appeal on December 27, 2011, and the Michigan Supreme Court denied leave to appeal on September 27, 2012.  (*See* ECF Nos. 32, 33.)

Petitioner filed the instant action on or about December 30, 2012, raising only those issues presented to the state courts on collateral review.

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have

appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

-7-

**Discussion**

I.      Ground I:  Failure to Give *Miranda* Warnings

In his first ground for habeas relief, Petitioner asserts that he was deprived of his due process rights, because, at the time of his arrest, he not was provided the prophylactic warnings described in *Miranda v. Arizona*, 384 U.S. 436 (1966).[3]

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST., amend. V. In *Miranda*, 384 U.S. 436, the Supreme Court held that, in order to protect an individual's Fifth Amendment privilege against self incrimination, when an individual is in custody, law enforcement officials must warn the suspect before his interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel. *Id.* at 478-79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994). The *Miranda* Court held "that the admissibility in evidence of any statement given during custodial interrogation of a suspect would depend on whether the police

---

[3]The trial court rejected Petitioner's first habeas ground, as it did those raised in Grounds II, IV and V, because the issues could have been raised on direct appeal and Petitioner had failed to demonstrate in Ground III that appellate counsel was ineffective in deciding not to present these claims on direct appeal. It therefore concluded that Grounds I, II, IV and V were procedurally barred under MICH. CT. R. § 6.504(B)(2). "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 130 S. Ct. 2788, 2801 (2010). Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

provided the suspect with [the *Miranda*] warnings." *Dickerson v. United States*, 530 U.S. 428, 435 (2000).

In the instant case, the prosecution made no attempt to introduce any statement made by Petitioner after his arrest. As a result, even if the Court were to assume that the police failed to read Petitioner his rights and that he subsequently gave an inculpatory statement,[4] any error was harmless. *See Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (holding that in §2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993)).

II.     Ground II:  Ineffective Assistance of Trial Counsel

In Ground II of his habeas application, Petitioner argues that his trial attorney was ineffective in refusing to allow Petitioner to testify, refusing to subpoena witnesses, failing to raise an issue of jury tampering, and refusing to introduce a poem as an exhibit at trial.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be

---

[4]The Court notes that the record is devoid of evidence that would support Petitioner's conclusory claim that the police interrogated Petitioner without providing him with his *Miranda* warnings.

considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

## A.     Refusal to allow Petitioner to testify

Petitioner complains that trial counsel refused to allow him to testify at trial. Although the right to testify is a fundamental right subject only to knowing and intelligent waiver, "waiver of certain fundamental rights can be presumed from a defendant's conduct alone, absent circumstances giving rise to a contrary inference." *United States v. Stover*, 474 F.3d 904, 908 (6th

Cir. 2007). The Sixth Circuit repeatedly has recognized that, "'[a]lthough the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed.'" *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (quoting *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000)). "Barring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record." *Webber*, 208 F.3d at 551 (citing *United States v. Joelson*, 7 F.3d 174, 177 (6th Cir. 1993) (other citations omitted)).

In the instant case, nothing in the trial record suggests that Petitioner disagreed with his attorney's representation that the defense would not put on witnesses. Under these circumstances, waiver of the right to testify is presumed. Because Petitioner cannot show that his right to testify was impaired, he cannot demonstrate that counsel's performance was deficient. *Hodge*, 579 F.3d at 640. Where counsel's performance did not fall below an objective standard of reasonableness, the court need not reach the question of prejudice. *See United States v. Foreman*, 323 F.3d 498, (6th Cir. Mar. 25, 2003).

### B.    Refusal to subpoena witnesses

Petitioner declares that his attorney failed to subpoena any of his witnesses. The petition and attachments are devoid of information about which witnesses Petitioner wished to have called or what those witnesses ostensibly would have said. Similarly, Petitioner's motion for relief from judgment contained no specific argument or information about the substance of what any witnesses would have said. Instead, the only reference to the witnesses Petitioner wished to call is

an attachment to the motion for relief from judgment, entitled "Witness List," which substantially

consists of gibberish, but identifies the following list of proposed witnesses to be subpoenaed

(reproduced as accurately as possible here):

1. Gov Jenny – All poems [illegible] '666' .3 pg explanation
2. Atty Genral Cox. Not V.D. poems
3. David Tanay . Criminal Div. }7 pg of 6 pg letters or - 19999 - pp
4. John Mulvaney - ".7 point".}
5. Colnel Munoz > MI State Police.  Letter, poems, Mr. Carr
6. Capt. Smith [same]
7. L.P.D. Chief Alley? -  4 point complaint
8. Bath Chief Rose [same]
9. Clinton County Sheriff;s Dept. (upper Schalant) (5) suspects
10. Monica - post office} everything, PPO { Appeal
11. Toni - Q. Dairy [same]
12. Mrs. Sturgis - My Case Manager - DHS
13. Danny Schofield - Help make Lines – Cupid 2008
14. L.p.D. Cherie Ballor - Emailed Twice: She"s out of office(?)
15. "5" Horseman - Clinton Co.
16. "4" Horseman - Ingham Co. Ward & Gearld (Minus Sgt. Hull) for now
17. L.S.J. : Receptionist & Editor-In-Chief (2-14-08)

Forgot:  L.S.J. (17) & Clerk of Courts & Male 3-R
L.P.D. Bill Barmes      Veterans Memorial Courthouse

(Attach. to Mot. for Relief from J., ECF No. 30.)

Nothing in the witness list suggests that any of the proposed witnesses – from former

Michigan Governor Granholm to various police officials to Lansing State Journal employees to

clerks of court – would have had information relevant to the issues to be decided in the case.

Moreover, even Petitioner's Department of Human Services case manager, could have done no more

than testify to Petitioner's mental health – a concern that could not have excused Petitioner's

conduct, as he had been found competent to stand trial.  Indeed, the nonsensical witness list wholly

supports the presumption that counsel acted reasonably in refusing to subpoena or call Petitioner's

-12-

proposed witnesses. Petitioner has utterly failed to demonstrate either that counsel's performance was deficient or that the testimony of any of the proposed witnesses could have altered the jury's decision.

### C.     Failure to raise jury tampering claim

Petitioner next argues that his attorney rendered ineffective assistance when he failed to object to the presence at trial of the claimant's brother, a uniformed police officer, who was seated next to the claimant in the gallery, somewhere behind the prosecutor's table. Petitioner argues that having a uniformed officer seated next to the claimant suggested to the jury that Petitioner was dangerous, in violation of his right to due process and a fair trial. He analogizes the officer's presence in the courtroom gallery to jury tampering.

Petitioner's argument is frivolous. The Supreme Court has recognized only limited and extreme circumstances in which a defendant's right to a fair trial may be impinged by certain nontestimonial indications of guilt. For example, in *Estelle v. Williams*, 425 U.S. 501 (1976), the Court held that a defendant cannot be compelled to stand trial in jail garb, because of the inherent prejudice of such clothing. Similarly, in *Deck v. Missouri*, 544 U.S. 622 (2005), the Supreme Court held that the Constitution forbids the use of visible shackles during guilt and penalty phase unless justified by an essential state interest. No court, much less the United States Supreme Court, has ever suggested that the presence of a uniformed officer in the gallery of a courtroom, even when seated next to a lead witness when she is not testifying, violates due process. Because Petitioner cannot show that his right to due process was impaired, he cannot demonstrate that counsel's failure to object constituted deficient performance within the meaning of *Strickland*, 466 U.S. at 689.

-13-

## D.        Refusal to admit poem as exhibit

In his final claim of ineffective assistance of counsel, Petitioner argues that his attorney was ineffective in failing to admit the poem he allegedly gave to the complainant on January 21, 2008.  As described in the statement of facts, the complainant testified that the first time she met Petitioner was on January 21, 2008, when he spent an entire evening in the bar where she was working as the only employee:

> According to complainant, near the end of her shift defendant handed her a poem he had written, which she described as "disgusting," "dominating and forceful," and sexual in nature, causing her to feel "uncomfortable and really unsafe."

(MCOA Op., ECF No. 32.)  She also testified that she did not keep the first poem Petitioner sent to her, but instead handed it back to Petitioner.  The exhibit Petitioner wanted his attorney to admit is a poem that Petitioner subsequently provided, which he claimed was the poem he gave to the complainant on January 21, 2008.  The poem, however, bears no resemblance to the one described by the complainant.  Petitioner admitted in his motion for relief from judgment that his attorney advised him that the poem he wished to introduce could only be introduced if Petitioner testified, something the attorney recommended against.

That advice was patently correct.  The poem was not self-authenticating, and Petitioner was the only person who could testify to its authenticity.  *See* MICH. R. EVID. 901.  As the Court previously discussed, Petitioner fails to overcome the presumption that counsel effectively represented him or the presumption that Petitioner waived his right to testify.  As a consequence, counsel reasonably made no attempt to admit the document, as any such attempt would have been futile.  Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v.*

-14-

*Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

III.     Prosecutorial Misconduct

Petitioner contends that the prosecutor committed misconduct, in violation of the Due Process Clause, by denying Petitioner exculpatory evidence and by improperly tainting the jury during voir dire.  In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.  *See id.* at 12-13;  *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).  "Claims of prosecutorial misconduct are reviewed deferentially on habeas review."  *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'"  *Slagle*

*v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (internal quotation omitted).

### A.      Suppression of exculpatory evidence

Petitioner argues that the prosecutor impermissibly suppressed the January 21, 2008 poem written at the Crystal Bar.  Under *Brady v. Maryland*, 373 U.S. 83 (1963), "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id.* at 87.  The Supreme Court has held that "[t]here are three components of a true *Brady* violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id.* at 281 (quoting *United States v. Bagley,* 473 U.S. 667, 672 (1985)); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009).  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Bagley*, 473 U.S. at 682.

Petitioner utterly fails to demonstrate that the government suppressed the January 21, 2008 poem.  In fact, Petitioner alleges that he himself provided the poem he allegedly authored on

that date to both his own attorney and the prosecutor.  The *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006).  The government's failure to disclose potentially exculpatory evidence does not violate *Brady* "'where the defendant knew or should have known the essential facts that would permit him to take advantage of such information' or where the evidence is available from another source."  *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)).  "[W]here the alleged *Brady* evidence is available to the defense, there is really nothing for the government to disclose."  *Bell v. Bell*, 512 F.3d 223, 235 (6th Cir. 2008) (internal quotations omitted).  Because Petitioner was the original source of the allegedly suppressed evidence, his first claim of prosecutorial misconduct is frivolous.

## B.    Alleged jury tampering

In his second claim of prosecutorial misconduct, Petitioner contends that the prosecutor improperly allowed the complainant's brother to be in the gallery while he was on duty and in uniform while the jury was present.  He also suggests that the prosecutor improperly influenced the jury by a series of comments during oral argument.

The Court previously has rejected Petitioner's claim that he was deprived of due process by the presence of the complainant's uniformed brother in the gallery of the courtroom. Because Petitioner had no constitutional right to exclude the uniformed officer from the courtroom, the prosecutor could not have committed misconduct by allowing the officer to be present. Moreover, given the evidence against Petitioner, Petitioner could not have been prejudiced by the officer's presence.  Under these circumstances, Petitioner fails to show either the existence of improper conduct or that that conduct "'so infected the trial with unfairness as to make the resulting

-17-

conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643).

Petitioner next argues that the prosecutor impermissibly influenced the jury with a series of comments during opening statement, closing argument and rebuttal. In his brief in support of his motion for relief from judgment, Petitioner argued that the prosecutor had made a number of remarks during closing arguments that amounted to misconduct. Those arguments, in context follow.

First, in the opening statement, Petitioner points to the following statement by the prosecutor:

> And you'll hear testimony, and counsel and I have stipulated, that **on June 4th of 2008, the victim, Ms. McGuire, went and got a personal protection order, and took it out against the Defendant. And this was based on the poem on January 21st**, which she didn't keep, by the way, because she didn't have any reason to at the time. But she didn't want it. I believe she gave it back.

(Tr. I, 83.) Second, in his closing argument, the prosecutor made the following statements:

> As I said in the opening statement, I intended to present the evidence, and show to you a mosaic of the Defendant's guilt. When you put all of the pieces together, when you take the letters, take the fact that the Defendant had absolutely no legitimate purpose for sending these letters, and these supplements to the motion to terminate, you will see a clear mosaic of guilt. The Defendant is guilty of stalking, and he is guilty of aggravated stalking in that he violated that PPO. **A piece here and there may not seem to blow[sic]. This may not be a perfect image. It may be tarnished a bit. But, nonetheless, there is a mosaic of guilt here.**
>
> . . .
>
> Now the term: **"Lesbee friends," I suppose we're still splitting hairs here.** But the fact of the matter is, is he has already addressed one of his letters to the "Mohawk Mullet Pretender. Granted, [s]he has a mohawk. I presume the word "pretender" would imply that she shouldn't have a short haircut. These are just harassing messages, ladies and gentlemen. There is no other reason for it. It's just common sense.

-18-

(Tr. II, 63-64.)  In rebuttal to defense counsel's characterization of the prosecutor's use of the aggravated stalking statute as a "Dear John letter," the prosecutor argued:

> Well, correct me if I'm wrong, but I thought a Dear John letter was a letter that you gave to somebody when you're breaking up or leaving them, not a letter that you send somebody trying to have more contact with that person, or trying to reinitiate a relationship with that person.  Calling this a Dear John letter is a serious overstatement.  **The fact of the matter is, you can't ignore the contents of these letters, the contents of these poems.**
>
> I'm not out here because I hate the Defendant.  I'm not out here because I hate his personal opinions.  I don't particularly agree with them.  But what I take issue with, the Defendant's refusal to comply with the law, refusal to leave Ms. McGuire alone.  **This is not in my personal inquest [sic].  This is a matter of holding the Defendant accountable.**

(*Id.*, 83.)[5]

Petitioner utterly fails to explain how the comments were improper, much less how they misled the jury or prejudiced Petitioner.  In each case, the prosecutor was commenting on the evidence to be presented or that had been presented, expressly disavowing any personal acrimony toward Petitioner.  Moreover, the trial court on two separate occasions instructed the jury that the attorney's statements and arguments were not evidence.  (Tr. I, 74-75; Tr. II, 71.)  For all these reasons, Petitioner fails to demonstrate that the state court's rejection of his prosecutorial misconduct claim constituted an unreasonable application of Supreme Court precedent.  *Parker*, 132 S. Ct. at 2155.

---

[5]Petitioner also complains that the prosecutor's statement about the contents of the January 21, 2008 poem at trial differed slightly from that made at the preliminary examination.  Given that the statement made at the preliminary examination was not before the jury, it could not have resulted in a denial of due process.

-19-

IV.     Ground V:  Judicial Misconduct

In his fifth ground for habeas relief, Petitioner raises a number of incidents of alleged judicial misconduct.  First, he contends that he was never allowed to attend pretrial hearings.  Second, he argues that the court allowed jury tampering by permitting the complainant's uniformed brother to sit with the complainant in the courtroom gallery, after she had given her testimony.  Third, the court refused to grant Petitioner's request for new counsel between the end of the trial and the date of sentencing.  Fourth, Petitioner argues that he was denied 132 pages of exhibits for sentencing or appeal.  Fifth, he contends that the jury was contaminated during voir dire by the dismissal for cause of a potential juror.

"Due process requires a fair trial before a judge without actual bias against the defendant or an interest in the outcome of his particular case." *United States v. Armstrong*, 517 U.S. 456, 468 (1996); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process.  Fairness requires an absence of *actual* bias in the trial of cases.") (emphasis added)).  However, because of the difficulty in determining "whether a judge harbors an actual, subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias."  *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (internal quotations omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009).  The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases:  (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1997) (subsequently expanded to include even indirect pecuniary interest, *see Railey v. Webb*, 540 F.3d 393, 399-400 (6th

-20-

Cir. 2008); (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor," *Murchison*, 349 U.S. at 141 (subsequently clarified to involve cases in which the judge suffers a severe personal insult or attack from the contemnor); and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 136 S. Ct. at 1905 (citing *Withrow v. Larkin*, 421 U.S. 35, 53 (1975). The courts indulge "a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013) (citing, *inter alia*, *Withrow*, 421 U.S. at 47). "The presumption of impartiality stems not merely from the judicial-bias caselaw, [] but from the more generally applicable presumption that judges know the law and apply it in making their decisions, *see Lambrix v. Singletary*, 520 U.S. 518, 532 n. 4 (1997), and the even more generally applicable presumption of regularity, *see Parke v. Raley*, 506 U.S. 20, 30–31." *Coley*, 706 F.3d at 751.

Petitioner utterly fails to provide any objective indication of actual bias. Instead, he simply claims that certain judicial determinations in his case were erroneous, from which he infers that the judge must have been biased against him. Such an unsupported, conclusory allegation fails to overcome the presumption of judicial integrity.

Although Petitioner fails to demonstrate judicial bias, the Court will address whether any of the individual errors alleged under this claim rise to the level of a constitutional violation.

## A.     Denying right to attend pretrial hearings

Petitioner broadly argues the trial court violated his constitutional rights when it failed to allow him to attend any pretrial hearings. His argument fails for numerous reasons.

First, Petitioner's argument is wholly conclusory. He does not even identify which hearings he believes he should have been permitted to attend.

-21-

Second, his claim that he was not present at any pretrial hearing is belied by the transcripts of the preliminary examination hearing (ECF Nos. 24-25) and the competency hearing (ECF No. 26), both of which reflect that Petitioner was present.  According to the trial court's register of action, Petitioner signed a written waiver of his arraignment in the circuit court, so no arraignment hearing was even  held.  (Reg. of Action, 1-2, ECF No. 23.)  As a result, the only hearing shown on the register of action at which Petitioner was not present was an off-the-record pretrial conference held on August 13, 2008.  (*Id.*, 2.)

Third, Plaintiff's absence from the pretrial conference was not a deprivation of any constitutional right.  The right to be present at the critical stages of criminal proceedings is rooted in the Due Process Clause of the Fifth and Fourteenth Amendments and the Confrontation Clause of the Sixth Amendment.  *See United States v. Gagnon*, 470 U.S. 522, 526-27 (1985).  The right to cross-examine witnesses is a primary interest protected by the Confrontation Clause.  *See Kentucky v. Stincer*, 482 U.S. 730, 736 (1987).   As a result, for purposes of the Confrontation Clause, the issue is whether excluding Petitioner from a pretrial conference interfered with his ability to effectively cross-examine witnesses during the trial.  *See United States v. Taylor*, 439 F. App'x 34, 44 (6th Cir. 2012).

Pretrial conferences typically address questions concerning the admissibility of evidence, the timing of the trial proceedings, and jury instructions.  *See id.*  The courts routinely have concluded that the Confrontation Clause is not ordinarily implicated by a defendant's absence from a pretrial conference.  *Id.* (citing *United States v. Jones*, 381 F.3d 114, 122-23 (2d Cir. 2004) (noting that because the question whether defendant's counsel had a conflict of interest was one of law, the defendant was not required to be present); *United States v. Barth*, 424 F.3d 752, 762-63 (8th Cir.

-22-

2005) (holding that a "defendant's presence is not required at a conference regarding trial procedure"); *United States v. Romero*, 282 F.3d 683, 689-90 (9th Cir. 2002) (holding that a defendant does not have a constitutional or statutory right to attend a conference between the court and counsel to discuss jury instructions)).  Petitioner has utterly failed to demonstrate how his presence at a proceeding dealing with questions of law or trial procedure could have affected his ability to effectively cross-examine witnesses.  As a consequence, he fails to demonstrate a violation of the Confrontation Clause.

A defendant has a due-process right to be present at all stages of a criminal proceeding "to the extent that a fair and just hearing would be thwarted by his absence.  Thus a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."  *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (internal citations and quotation marks omitted).  In other words, Petitioner's "right to be present at every stage of the trial is not absolute, but exists only when 'his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'"  *United States v. Henderson*, 626 F.3d 326, 343 (6th Cir. 2010) (quoting *Stincer*, 482 U.S. at 745).

Petitioner does not even argue how his presence at a pretrial conference would have contributed to the fairness of the proceeding.  The record is devoid of evidence that Petitioner "could have done anything had he been at the hearing [or that he] would he have gained anything by attending."  *Stincer*, 482 U.S. at 747 (original brackets omitted) (quoting *Gagnon*, 470 U.S. at 527).  He has therefore failed to show that his due-process rights were violated by being excluded from

these proceedings.  The state court's rejection of his claim constituted a reasonable application of

Supreme Court precedent.

### B.      Allowing complainant's brother in courtroom

Petitioner's second claim of judicial bias is a simple restatement of his claim to have

been denied due process by the presence of the complainant's brother, a uniformed police officer,

in the gallery of the courtroom.  For the reasons previously discussed, Petitioner fails to demonstrate

that he was deprived of due process.

### C.      Denial of request for new counsel

Petitioner contends that the trial court unconstitutionally denied his request for a new

attorney, which he purportedly made between trial and sentencing.  The Sixth Amendment provides

a criminal defendant with the right "to have the Assistance of Counsel for his defense."  U.S. Const.,

amend. VI.  One element of that right is the right to have counsel of one's choice.  *See United States

v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006).  However, the right to counsel of choice is not without

limits.  *Id.* at 148; *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007).  "[T]he right to

counsel of choice does not extend to defendants who require counsel to be appointed for them."

*Gonzalez-Lopez*, 548 U.S. at 151 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988), and

*Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)).  "'An indigent defendant

has no right to have a particular attorney represent him and therefore must demonstrate "good cause"

to warrant substitution of counsel.'"  *Mooneyham*, 473 F.3d at 291 (quoting *United States v. Iles*, 906

F.2d 1122, 1130 (6th Cir. 1990)); *see also Caplin & Drysdale*, 491 U.S. at 624 ("[T]hose who do

not have the means to hire their own lawyers have no cognizable complaint so long as they are

adequately represented by attorneys appointed by the courts.").  Thus, where a court is faced with

a defendant's request to effect a change in his representation by way of a motion to substitute counsel, the court must determine whether there is good cause for the substitution by balancing "the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996).

At no time – whether in his motion for relief from judgment, his brief on appeal to the Michigan appellate courts, or in his habeas application – has Petitioner identified any basis for requesting new counsel. Moreover, the Court previously has rejected Petitioner's claims that trial counsel rendered ineffective assistance. Under these circumstances, Petitioner fails to demonstrate that he was constitutionally entitled to a substitution of counsel.

### D. Denial of exhibits

Petitioner argues that he was "[d]enied 132 pages of exhibits for appeal at sentencing to be submitted." (Pet., ECF No. 1, PageID.12.) He provides no further explanation of what he means. It therefore is unclear whether he believes that he was entitled to exhibits at sentencing or on appeal. More importantly, however, Petitioner utterly fails to describe the exhibits to which he refers or how the alleged deprivation could have resulted in a deprivation of due process. The claim therefore is denied because it is wholly unsupported.

### E. Contamination of jury venire

In his fifth claim of judicial misconduct, Petitioner contends that the entire jury pool was contaminated when one potential juror, who was ultimately excused for cause, expressed uncertainty about his ability to be fair because of his sister's past experience with a stalker. The Sixth Amendment guarantees an accused the right to be tried "by an impartial jury." U.S. Const. amend VI. *See Irvin v. Dowd*, 366 U.S. 717, 723 ((1961) (describing the standard as the right to be

-25-

tried before "a panel of impartial, 'indifferent' jurors"). "It is not required, however, that the jurors be totally ignorant of the facts and issues involved. . . . To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard." *Id.* at 722-723. As the Supreme Court has explained, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 723. Moreover, any claim that a jury was not impartial must focus only on the jurors who ultimately sat on the case, not on those who were excused. *Ross v. Oklahoma*, 487 U.S. 81, 86 (1988). Finally, as the Sixth Circuit has recognized, there exists a "well-established presumption of juror impartiality, *see Irvin*, 366 U.S. at 723, as well as the equally important presumption that jurors followed the trial court's instructions, *United States v. Tines*, 70 F.3d 891, 898 (6th Cir. 1995)." *United States v. Guzman*, 450 F.3d 627, 629 (6th Cir. 2006).

Petitioner has presented no evidence of actual juror bias to overcome the presumption that the jury was impartial. *Id.* (citing *Irvin*, 366 U.S. at 723; *United States v. Jobe*, 101 F.3d 1046, 1048 (5th Cir. 1996)). He merely argues that the potential juror's honest disclosure of uncertainty about his ability to be fair was sufficient to prejudice the entire jury pool. In *Guzman*, however, the Sixth Circuit expressly held that such a generalized argument that the jury venire had been "indoctrinate[d]" by a single juror's expression of prejudice was insufficient to overcome the presumption of jury impartiality. *Guzman*, 450 F.3d at 629-30. Other courts have similarly concluded that the presumption of impartiality of unexcused jurors is not undermined when an

excused, potential juror announces his potential bias.  *See United States v. Olaseinda*, No. 96-4576, 1997 WL 253020, at *1, 1997 U.S. App.  LEXIS 11365, at *2-3 (4th Cir.  May 15, 1997) (per curiam) (rejecting defendant's argument that the entire venire was contaminated by a prospective juror's statement, based on her experiences as a juror in other cases, that a defendant on trial is probably guilty); *United States v. Buchanan*, 787 F.2d 477, 480 (10th Cir. 1986) (affirming a district court's refusal to dismiss the entire venire after hearing statements from one potential juror that he may not be able to remain impartial because his home had recently been vandalized), *overruled in part on other grounds by United States v. Welch*, 928 F.2d 915 (10th Cir. 1991); *United States v. Jones*, 696 F.2d 479, 491-92 (7th Cir. 1982) (finding no error in a district court's decision not to dismiss any other juror after one potential juror stated that a defendant's decision not to testify may affect his judgment as to guilt, and another potential juror stated that a newspaper report would likely affect his judgment).

Here, the content of the statement made by the potential juror was limited to his disclosure that he feared that, despite his best intentions to limit his decision to the facts before him, he might be influenced by his sister's past experiences with a stalker.  (Tr. I, 25, 34-35, 43-44, 47.) Nothing about this revelation was inherently prejudicial to the other jurors.  Moreover, all jurors agreed that they could be impartial.  Further, the judge repeatedly instructed the jurors about what constituted evidence and the jury's duty to decide the case solely on the evidence introduced in the case.  (Tr. II, 112-117; Tr. VI, 9-13.)

Under all of these circumstances, Petitioner's claim that the jury was tainted falls far short of demonstrating a constitutional violation.  The state court's rejection of the claims constituted an entirely reasonable application of clearly established Supreme Court precedent.

V.      Ground III:  Ineffective Assistance of Appellate Counsel

Petitioner argues that his appellate attorney was ineffective in failing to raise the grounds presented in Petitioner's motion for relief from judgment, which are the grounds presented in this petition.

An appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Strickland*, 466 U.S. at 688.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.  *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present."  *Id.*

As previously discussed, all of the other grounds presented in Petitioner's motion for relief from judgment were meritless.  Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal.  *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. Feb. 26, 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective

in declining to raise issue on appeal).  The state court therefore properly rejected as meritless Petitioner's third ground for habeas relief.

### Conclusion

In light of the foregoing, the Court will deny Petitioner's application because it fails to present a meritorious federal claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

-29-

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:  ____September 7, 2016____          /s/ Robert J. Jonker_____
                                          ROBERT J. JONKER
                                          CHIEF UNITED STATES DISTRICT JUDGE